The court will proceed to the 5th case, Williams v. Norfolk Southern. The court will proceed to the 5th case, Williams v. Norfolk Southern. Ms. Jones. Thank you, sir. May it please the court. The issue before this court, on appeal, is whether the district court erred when it granted Norfolk summary judgment based upon the district court's own apportionment of fault. The standard to be applied in this circumstance is clear, it's conjunctive, and it's exacting. The only time in which a court may intrude on the province of the jury regarding the apportionment of fault is when there is no dispute in the evidence and only one logical conclusion that can be drawn from the evidence. Neither of those factors were met in this case, let alone both of them. Now, my brief goes into detail about the different disputes in the evidence, and so I won't in the interest of time go through those at length, but I will recite them. The first dispute in the evidence is whether the train was clearly visible to the plaintiff and one of the witnesses. The next dispute in the evidence is whether the conductor could have engaged the emergency brake before the train struck Williams. Norfolk claims that he simply couldn't have. Then the parties dispute whether the evidence shows whether the outcome would have changed if the conductor did activate the brake sooner. Our expert says that the impact could have been avoided completely. Norfolk appears to identify an additional dispute in the evidence in their brief before this court, whether the boys were even discernible to the conductor prior to the impact, apparently now arguing that perhaps the conductor didn't see them or know what they were doing, even though the conductor himself testified that he saw the boys running towards the track. The fifth dispute in the evidence is whether the crew had reason to place the train in emergency status when the conductor saw the boys running towards the tracks. And finally, the last dispute, whether the boys ran past or around or under the downed gates. This is a dispute which the district court itself recognized in its order. Again, there's multiple disputes in the evidence here, where only one of which was enough to preclude summary judgment. And that's the Gerlach versus Centers case. It's a 2007 case from this court, where this court held that summary judgment was inappropriate when there was only one dispute in the evidence. Gerlach involved a two-vehicle accident at an intersection. One of the reasons it did not, the undisputed evidence in that case, was that one vehicle ran the red light. However, there was one dispute in the facts, and that was the speed of the other vehicle that didn't run the red light. And this court held that that one fact was enough to preclude summary judgment. The case at bar has at least six disputes. Moving to the second prong, and assuming just for argument's sake that there was no fact-finder in this case, may come to more than one logical conclusion based upon the evidence before it. Specifically, a jury could find that Norfolk's fault was greater than the plaintiff's. And here's where we look at some of the case law that the district court cited in its order, two of which are 1995 Seventh Circuit cases. Thiel versus Norfolk, and Reals versus Conrail. Thiel is a case where Craig Thiel, familiar with the railroad tracks, drove his car over and onto the tracks in broad daylight, stopped his car on the tracks, put it in park, right in front of an oncoming train. Now, the case is silent as to the state of mind of Craig Thiel, but the facts are clearly distinguishable. Critically, however, in arguably the most important distinguishment between that case and the case at bar is that Thiel had no disputes in the evidence. And therefore, this court was able to evaluate whether a fact-finder would only come to one logical conclusion, which is the order of that standard. Same case in Reals. Reals and Conrail. No disputes in the evidence. The undisputed facts show that the young lady was on her bike, the gate was down, the flashers were going, and she went around the gate and got hit by the train. Undisputed facts. And the court was able to come to that second prong of only one logical conclusion. Looking at the facts in our case, then, Williams was not familiar with the crossing. He had crossed it once before, minutes before this accident, in the dark. It was dark and he was running in the opposite direction. He didn't know where the train was coming from or even if there was a train. Neither did one of the other witnesses. All three of the boys testified that they never saw flashing lights. All three of the boys testified that the guardrails weren't down. You can see that part of that, though, is not true when you watch the video. Right? I mean, it doesn't mean you won't prevail, but when you watch the video, it's pretty clear that the guardrail that they're running toward is down and blinking. The guardrail on the west side. Yeah, the direction they're running in, so it would be the rail they're running to. What's the question? So you have that. You can hear the bells and horn. You have that as well. And you have the second, I don't know all their names, but you have the one individual who was running toward the track and was able to hold up or stop. What's the legal and factual significance of that? Because I just think when you watch the video, that individual was pulling back in reaction to the train. And I understand your question correctly, Your Honor. I think that we're looking at this in terms of what each witness is perceiving and when they're perceiving it. And that same witness testified that he didn't even know there was a train there until that moment. And he's the same witness that testified that the gates weren't down in front of him. But in enough time to actually stop? A split second, yes, Your Honor. So if you accept that, how do you deal with that from your client's perspective? Well, I think it goes back to evaluating the evidence. I think it goes back to my original point that at the end of the day, this is for a jury to evaluate and to evaluate whether that has an impact on what my client was doing and whether that negates any negligence of Norfolk simply because one of the other boys was able to stop before the train hit him. I think it goes all the way back to the primary argument of that's to be evaluated by a jury, sir. And I truly believe that J. Lynn is due his day in court to argue these facts to a jury to weigh the evidence. Again, going back to the two-prong test, if there's a dispute in the evidence, which there are several in this case, and if there's more than one logical conclusion to be drawn from those facts, it should be left to a jury. And I believe that's a very important concept for this case. How old was your client at the time of the accident? I believe he was 17. I believe he was 17 at the time of the accident. Is that anywhere in the record? You don't need to pause on it. I think it is, Your Honor. I think it's in the briefing in the district court, but I can't be certain on that. And the other two fellows were about the same age? Same age, high school seniors. Okay. And I'm going to preserve some time for rebuttal. Thank you. All right. Thank you, Ms. Jones. Mr. Locke. Thank you, Your Honor. Williams argues that he and his friends all testified that the gates weren't down and that they didn't see any flashing lights or run around lowered gates. He also claims that one of his friends testified that he didn't see any flashing lights on a train and didn't even know there was a train there until it hit Williams. Based on this testimony, he tells the court that there's disputed issues of fact. It's true as a general proposition of law that disputes in factual issues have to be construed in favor of the non-movement. But the Supreme Court has held that there's an exception to that proposition when a witness's testimony is clearly contradicted by objective evidence. In Scott v. Harris, the Supreme Court said, when opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. In the Scott case, the Supreme Court found the respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The court concluded that the court of appeals should not have relied on such visible fiction. It should have viewed the facts in the light depicted by the videotape. In this case, we have exactly the same kind of objective video evidence. The magistrate judge watched the rail view video and he stated in his order that it's clear that the flashing lights and gates were operational. He also stated that the undisputed evidence shows that Williams ran onto the track without first taking the simple precaution of looking up to confirm the location of the approaching train despite the audible sounding of its horn. He's right. In the rail view video, you can see that the crossing devices are activated. You can hear the horn. You can see Mr. Williams and his friends as they get close to the tracks. Antoine McGee looks toward the train and breaks into a sprint to get across the tracks before it gets there. Giovante Turan also looks toward the train and he instantly stops running before he gets to the tracks. The video contradicts Turan's testimony that he didn't know there was a train there until it hit Williams. You can also see Williams in the video. Unlike his two friends, he never looks in the direction of the train. He runs directly into its path. Williams admitted in his deposition that he didn't pause to see if a train was coming because his attention was focused on getting out of the park before the police caught up. The video evidence leaves no question that Williams' friends saw a train and took steps to avoid a collision. Williams attempts to mitigate his own negligence by claiming that the crossing was confusing. The record makes clear that Williams knew the tracks were there. He'd just been across them a few minutes before when they were heading toward the park and he admitted in his deposition that the tracks themselves were visible as he approached them. There's also no question that he had a clear and unobstructed view of the train. The evidence in the district court established that a person in his position looking in the direction of the train would have been able to see 1,900 feet down the tracks. Williams argues that there were no flashers or a gate on his side of Norfolk Southern's crossing since the flashers and gate for westbound traffic were located on the east side of CSX's crossing. Norfolk Southern presented evidence in the district court that federal funds were used to install warning devices at the crossing, which preempts any claim, any argument that the crossing was extra hazardous or that the warning device system was somehow inadequate for conditions. Williams didn't respond to Norfolk Southern's argument in the district court and the court found that he had therefore waived those arguments. To allow Williams to argue that the crossing's warning devices were inadequate and confusing to avoid his claim being barred under Indiana law would let a jury substitute its determination of adequacy for the Secretary of Transportation's determination. And that would be contrary to the doctrine of federal preemption. The whole point of the doctrine is to take the issue of adequacy out of the hands of the railroad and the jury. The jury, the district court... Can you respond to the points your adversary makes though about your focusing, I understand why, on the plaintiff and what the plaintiff did and didn't do, but can you focus for a minute on your client, the conductor, and what options were available to him in a tragic situation like this? Because you do have, if I got the timeline right, what the conductor saw the boys at the 13 second mark? Your Honor, the video shows that he, let me back up, he testified in his deposition that he saw them at the beginning of the second blast of the horn. The video, the beginning of the second blast of the horn, is at 18 hours, 11 minutes, and 6 seconds. If you watch the video, the impact with the plaintiff is at 18 hours, 11 minutes, and 16 seconds. So there's 10 seconds of elapsed time between the beginning of the second blast of the horn and the impact. Oh, I see. Okay. What was the amount of time that the expert testimony showed that it would take if you pull the emergency device? It would take 9 seconds for the train to slow enough for it to have missed Mr. Williams. Our expert testified that in any situation where someone has to respond to an unexpected event, you have to allow perception, decision, reaction time. He said that a fair number for that was 1.5 seconds. Some experts allow more than 1.5 seconds to respond to an unexpected situation. If you allow the 1.5 seconds that immediately means that you cannot, if you're 10 seconds away, it's going to be less than 9 seconds by the time the emergency breaks. So your point is that at the time the visibility opened up and he saw the boys, he would have had to nearly instantaneously pull the lever. Exactly, Your Honor. He would have had to have known at that point that one of the three boys would not respond to seeing the train. And that's just impossible for someone to know that that far ahead of a crossing. In this particular case the plaintiff, Mr. Williams, is arguing that Norfolk Southern's duty should not be addressed, that it's not properly before this court. And the case law that Williams cites he misconstrues. All the decisions that he relies on dealt with an attempt to alter or modify a result or an attempt to address an issue on the merits of the Court of Appeals after the District Court had determined that, or had dismissed the claim for lack of improper venue. It's true that you can't seek a different result when you haven't filed an appeal, but none of the cases that Williams cites to the court deal with affirming the same result with a different rationale. This court's decision in Gerhart's v. Richard is on point. Review isn't limited to the District Court's reasons for awarding summary judgment, but summary judgment can be affirmed on any alternative basis found in the record as long as the District Court adequately considered it and the non-movement had an opportunity to contest it, which is the case here. Norfolk Southern's duty was addressed in the party's briefs and the District Court also addressed it in its order but decided it wasn't necessary to reach that issue. So the issue was properly preserved in the District Court and presented in the District Court and it's properly before this court as an alternative basis for summary judgment. There's no question that the train crew was complying with the duty to maintain a lookout. Williams himself is saying that the conductor saw him in time to avoid a collision, so the only issue is whether the crew had a duty to activate the train's emergency brake system at a time when doing so would have avoided the collision and as I indicated, that's not possible. At minimum, it would have been less than nine seconds by the time the emergency brakes could have been activated and that wouldn't have been sufficient time for the train to have slowed enough to have missed Mr. Williams. Indiana law is clear that if a train crew observes a person in a position of peril from which he's unable to extricate himself and the crew has that information in sufficient time to allow them to avoid a collision, then they have a duty to do that, but the law is also clear that that duty does not arise when a train crew first spots a person approaching the tracks. The duty only arises when the crew realizes that the person isn't going to yield right of way to the train and in this case, we had three men running toward the crossing. One of them responded by sprinting across the tracks, another one responded by checking up and stopping short of the tracks, and the third one just failed to look for the train, knew the tracks were there, could see the tracks, and entered the crossing without looking in the direction of the train, and that's clearly more than 50% of the fault here. I think my time is up. Thank you Mr. Wright. Ms. Jones? Thank you. I would be remiss if I didn't point out that now there is another dispute in the evidence, and that is whether it was 10 seconds before that they saw the boys or 13. I didn't think it was a dispute, but apparently it is now. The records and the evidence before this court show that it was 13 seconds, and so technically, it wasn't one second that he had to make a decision. It was 13, 12, 11, 10, 9, and I just want to touch on duty briefly. The duty owed Norfolk claims that they didn't owe a duty to Jay Lynn. Understandably, the speed is a preempted issue unless there's a specific individual hazard, and there are several cases directly on point coming from the Northern District of Indiana that says that a specific individual hazard is something like running towards the tracks, unwavering approach. When the conductor saw the boys, and you can see it in the real view video, they were running towards the tracks, and they weren't just running towards the tracks in some strange location. They were in the crossing already. This crossing spans over the length of a football field, and they were already within the crossing  didn't know of the intent is contrary to what the evidence shows us. It's contrary to what the evidence shows us on the real view and what the conductor testifies to himself, and I am not foolish enough to stand in front of this court and claim that my client has no fault in this matter, but let the jury tell my client that he's more than 50% at fault. Ms. Jones, Mr. Williams says he didn't hear the train. His friends say they did, but they thought it was another train? There's five sets of tracks. I'm familiar with the scene. One of the witnesses That was my follow-up question. Was there any evidence in the record that there were other trains that could have caused that sound that the others heard at that time? Nothing is in the record to answer your question specifically. Thank you.